**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

PATRICIA S. LYONS,

        Plaintiff,

v.                                  CIVIL ACTION NO.  5:10-cv-01019

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER
ADOPTING FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401- 433, 1381-1383f.  By Standing Order entered on August 16, 2010 (Document  4), this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636.  On August 18, 2011, Magistrate Judge VanDervort submitted his proposed findings and recommended that the Court (1) deny Plaintiff's Brief in Support of Judgment on the Pleadings ("Pl.'s Mot.") (Document 11); (2) grant Defendant's Brief in Support of Judgment on the Pleadings ("Def.'s Mot.") (Document  12); (3) affirm the final decision of the Commissioner, that Petitioner is not disabled within the meaning of the Act because she has the residual functional capacity to perform medium work with few limitations and is therefore capable of performing jobs that exist in significant

numbers in the national economy, and (4) dismiss this matter from the Court's docket. Proposed Findings and Recommendation ("PF&R") (Document 13) at 28.

This matter is currently before the Court on Plaintiff's objections to the assigned Magistrate Judge's PF&R filed September 6, 2011. Plaintiff's Objections to the Report and Recommendations ("Pl.'s Obj.") (Document 14). Upon consideration of the parties' cross-motions for judgment on the pleadings, the Magistrate Judge's PF&R, Plaintiff's Objections, Defendant's Response to Plaintiff's Objection to the Magistrate Judge's Report and Recommendation (Document 15) and the entire record in this case, the Court overrules Plaintiff's objection, adopts the PF&R, and affirms Defendant's final decision.

I.

On September 6, 2007, Plaintiff, Patricia S. Lyons, filed applications for DIB and for SSI, in which she alleged a disability beginning July 16, 2006, as a result of the following conditions: "severe high blood pressure, vertigo, panic attacks, hypertension, depression, dizziness, nausea, loss of hearing and/or sight, cold sweats, and the inability to stand for long periods of time due to [a] bad right knee."[1] (Pl.'s Mot. at 1; AR at 140).[2] Plaintiff's applications were denied on November 14,

---

[1] Plaintiff provided the following explanation regarding how her illnesses or conditions limited her ability to work:

> In the middle of trying to complete small tasks, I am overwhelmed with dizziness, nausea, cold sweats, loss of balance, hearing and sight problems. This makes it impossible to accomplish anything. I have to lie down just to keep from passing out. When standing for very long, my legs and ankles swell and blister. My ability to drive is limited because I am afraid of causing an accident when I experience any of these symptoms. I experience severe headaches constantly. I haven't found any medication to help this condition. My right leg and hip also hurt which makes it difficult to stand, walk or sit. I spend a lot of time lying down due to feeling tired constantly. I don't like to go out in public, or be around other people when I am feeling bad. When I go out, I get very nervous which causes my blood pressure to go up.

(continued...)

2007, and upon reconsideration on February 12, 2008 (Pl.'s Mot. at 1.) Plaintiff requested a hearing, and a video hearing was held on August 18, 2009, before United States Administrative Law Judge ("ALJ"), Theodore Burock. (AR at 22.) On September 1, 2009, the ALJ issued his decision finding that Plaintiff was not disabled, under the Social Security Act, from July 16, 2006 through the date of the decision. (AR at 22.) Encapsulated in the ALJ's decision were the following findings and conclusions with respect to Plaintiff:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and had not engaged in substantial gainful activity since July 16, 2006, the alleged onset date. (AR at 13, Finding No. 1-2.)

- Plaintiff suffered from severe impairments due to her obesity, back, knees, headaches, vertigo, depression and anxiety (AR at 13, Finding No. 3.) However, Plaintiff had "certain medically determinable impairments that were nonsevere because they did not cause a significant limitation in [Plaintiff's] ability to perform basic work activities [and because] . . . evidence indicates [Plaintiff] had certain conditions that were well controlled with medications or produced no significant symptoms." (AR at 13.) Inclusive in this finding were considerations of Plaintiff's hypertension, hyperlipidemia, gastroesphageal reflux disease (GERD), abdominal hernia, allergic rhinitis, acute sinusitis, upper-respiratory infection, and dermatomycosis. (AR at 14.)

- She did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.(AR at 15, Finding No. 4.)

- Plaintiff had the residual functional capacity to perform medium work with certain limitations.[3] (AR at 16, Finding No. 5.) Although, Plaintiff's medically determinable

---

[1](...continued)
(AR at 140.)

[2] "(AR at ___)" refers to the administrative record which was filed by the Defendant on November 16, 2010. (Document 10).

[3] The ALJ found that Plaintiff:

> could have no frequent interaction with others to achieve job tasks; she must work in a low stress environment; she could never climb ladders, ropes, or scaffolds, she could only occasionally climb ramps or stairs, as well as perform balancing,

(continued...)

impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not credible, to the extent that they were inconsistent with the residual functional capacity assessment (AR at 16-17.)

- Plaintiff was unable to perform any past relevant work as a retail cashier and optical assistant because the positions involved frequent interaction with the public. (AR at 21, Finding No. 6.)

- On the alleged disability onset date, Plaintiff was 57 years old and, therefore, was considered an individual of advanced age. She had at least a high school education and was able to communicate in English. (AR at 21, Finding No. 7-8.)

- Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (AR at 21, Finding No. 10.)

- Plaintiff has not been under a disability, as defined in the Social Security Act, from July 16, 2006 through the date of its decision.

The ALJ's findings were based upon a review of Plaintiff's medical records from (1) her treating physician, Dr. Billy J. Cole, (2) Raleigh General Hospital Emergency Room notes, (3) Skiykumar, L. Iyer, M.D., a psychiatrist at FMRS Health Systems, Inc., (4) Charles F. Bou-Abboud, M.D., gastroenterologist, and (5) consultative examiners Mastafa Rahim, M.D., Kelly Robinson, M.A., and Debra Lilly, Ph.D, psychiatrist. The ALJ also considered the mental residual functional capacity assessment completed by Dr. John Todd and the physical residual functional capacity assessments completed by Dr. Uma Reddy and Dr. Curtis Withrow. The ALJ summarized his findings that Plaintiff possessed a residual functional capacity to perform medium work by stating that:

---

$^3$(...continued)
stooping, kneeling and crouching; she could never crawl, she could have no concentrated exposure to extreme temperatures, wetness, noise or vibration, and she could have no exposure to hazards such as unprotected heights.

(AR at 16.)

> [T]he evidence of benign findings, conservative care, and reasonable daily activities all suggest greater sustained capacity than [Plaintiff] alleged. Accordingly, the undersigned finds that [Plaintiff's] subjective complaints and alleged limitation are not fully persuasive and she retains the capacity to perform work activities with the limitations set forth above.

(AR at 21; *see supra* n.3.)

Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied on June 22, 2010, and the decision became the final decision of the Commissioner. (AR at 1.) On August 15, 2010, Plaintiff sought judicial review of Defendant's final decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five-step inquiry to determine eligibility for social security benefits. This inquiry requires the Commissioner to consider, in sequence, whether Plaintiff (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that meets or equals the requirements of a listed impairment; (4) could return to her past relevant work, and (5) if not, whether she could perform other work in the national economy. 20 C.F.R.§§ 404.1520, 416.920. The steps are followed in order, and if a Plaintiff is determined not to be disabled at one step, the evaluation proceeds to the next step. *See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

Section 405(g) of the Social Security Act provides that, "the findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) ("final determination of the Commission of Social Security . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."). This language limits the Court's role in reviewing the ALJ's decision to determining whether his findings are supported by substantial evidence. *See Craig v. Chatter*, 76 F.3d 585, 589 (4th Cir. 1996)("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard."); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig*, 76 F.3d at 589; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) ( "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance.") (citation omitted). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971). "In reviewing for substantial evidence, [the reviewing court] do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig*, 76 F. 3d at 589 (citing *Hays*, 907 F.2d at 1456.)

With this framework established, the Court will consider the parties' written submissions, the PF&R and Plaintiff's objection thereto.

### III.

In the instant Complaint, Plaintiff alleges that the Appeals Council's decision is arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence. (Compl. ¶ 6, (Document No. 2.)) In her brief in support of judgment on the pleadings, Plaintiff first contends that the ALJ failed to accord adequate weight to the opinions of Drs. Cole and Reddy and failed to provide adequate reasons for assigning "little weight" to these opinions. (Pl.'s Mot. at 4.) Plaintiff argues that the ALJ discounted the opinion of Dr. Cole, her treating physician, that her limitations would restrict her to a limited range of sedentary work and accepted that of a non-examining physician, Dr. Withrow, who concluded that she is capable of medium work with certain environmental limitations and postural restrictions. She notes that she complained of pain in her right knee to Dr. Cole on May 23, 2007 (AR at 297) and that "the severity of [her] obesity increased over the period of time during which the severity of the pain she reported increased." (*Id*. at 5-6.) With respect to Dr. Reddy, Plaintiff argues that the ALJ gave significant weight to Dr. Withrow's opinion over that of Dr. Reddy, another non-examining physician, who opined that she was capable of light work with certain environmental limitations and postural restrictions. Plaintiff argues that the two non-examining physicians reviewed identical medical information and the ALJ failed to explain the discrepancy in his assignment of the weight to their opinions. (*Id*. at 6.)

Second, she contends that the ALJ failed to discuss the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529 in making a credibility finding that is not based on substantial evidence. (*Id*.)

7

In the Defendant's motion for judgment on the pleadings, he asserts that the ALJ's opinion should be affirmed because the extreme limitations set forth by Dr. Cole were unsupported by Dr. Cole's own objective findings and the objective medical evidence in the record. Plaintiff's medical records included a brain scan and x-rays of her knee, hip and lumbar spine which were negative. (Def.'s Mot. at 10-13.) Defendant also argues that the ALJ properly assigned more weight to the report of state agency physician Dr. Withrow over that of Dr. Reddy because Dr. Withrow had the opportunity to review new medical evidence (*i.e.*, Dr. Rahim's consultative examination and x-ray reports) and his opinion was the most consistent with the record as a whole. (*Id*. at 13-16.) Finally, Defendant contends that substantial evidence supports the ALJ's determination that Plaintiff was capable of greater sustained activity than she alleged, given the objective medical evidence, Plaintiff's inconsistent reporting of symptoms and the conservative treatment evidenced in the record. (*Id*. at 17.)

Magistrate Judge VanDervort, in his PF&R, described the process for adjudicating disability claims as provided by the Social Security Regulations, set forth a discussion of Plaintiff's medical records, considered Plaintiff's challenges to the Commissioner's decision and Defendant's arguments in support of that decision.[4] Magistrate Judge VanDervort found that the weight afforded to Drs. Cole and Reddy's opinions was appropriate given objective medical evidence in the record indicating that Dr. Cole: did not impose any limitations on Plaintiff due to her obesity, though her obesity was supported by the record, failed to make any specific diagnosis regarding Plaintiff's back and knee pain and never made a diagnosis regarding her headaches. As noted by the ALJ, Dr.

---

[4] The Court notes that Magistrate Judge VanDervort included a detailed discussion of the medical evidence in this case, to which no objection has been made. Therefore, a further recitation of Plaintiff's complete medical record is not necessary here. However, the Court will include a brief discussion of the relevant medical findings in dispute and the ALJ's consideration of the same.

Cole's treatment notes did not reflect any indication of back or knee pain until April 2009, and the physical exam of her knee was unremarkable. The Magistrate Judge discussed the ALJ's consideration of x-rays and tests of Plaintiff's spine, knee and hip and an examination report by Dr. Rahim that revealed that Plaintiff exhibited negative straight leg raising and was able to walk and squat without difficulty. The Magistrate Judge considered that the weight given to Dr. Cole was appropriate considering that Dr. Cole only noted that Plaintiff's extreme limitations were due to osteoarthritis and degenerative joint disease with joint pain, which involved her left thumb joint.

With respect to the ALJ's consideration of Plaintiff's complaints of headaches, vertigo, nausea and vomiting, the Magistrate Judge found the ALJ's decision to give little weight to the opinion of Dr. Cole was supported by substantial evidence considering that Plaintiff occasionally complained of headaches, but Dr. Cole never made a specific diagnosis. Further, a brain scan performed at the direction of Dr. Rahim was negative, emergency room notes in August 2008 reflected a normal abdominal x-ray, and Plaintiff was not noted as dehydrated during any of the instances in which she complained of a history of vomiting.

Likewise, considering Plaintiff's assertions that the ALJ improperly discounted the weight governing Dr. Reddy's opinion and failed to explain the rationale of that determination, the Magistrate Judge found Plaintiff's contention lacking upon consideration of the ALJ's discussion of the medical record evidence as a whole. Additionally, the Magistrate considered that the evidence revealed that Dr. Withrow and Dr. Reddy did not review identical medical information, because Dr. Withrow had the benefit of the February 2008 testing performed by Dr. Rahim when he confirmed his opinions on Plaintiff's physical residual functional capacity. The Magistrate Judge found that the ALJ's decision was properly supported by substantial evidence and that the ALJ

9

properly explained the reason for providing Drs. Cole and Reddy's opinions with "little weight." (PF&R 17-23.)

The Magistrate Judge further found that the ALJ's credibility assessment conformed to the factors set forth in the applicable regulations given that the Plaintiff statements "concerning the intensity, persistence and limiting effects of the symptoms"she alleged was not supported by the medical record. The ALJ considered that the record was devoid of any acute findings of Plaintiff's headaches, vertigo, anxiety, depression and knee and back pain. The record reflected conservative care of treatment and medications which did not support Plaintiff's subjective symptoms. (PF&R 23-27.)

## IV.

Plaintiff timely filed her objections to the PF&R. In a one and a half page document, Plaintiff merely maintains her assertion that the ALJ's decision to give greater weight to the opinion of Dr. Withrow than that of Dr. Reddy was improper. Specifically, Plaintiff asserts that the PF&R "do[es] not shed further light on the ALJ's unsupported determination." (Pl.'s Obj. at 1.) Plaintiff also asserts that in giving more weight to the opinion of Dr. Withrow than that of Dr. Cole, the ALJ failed to provide an analysis as to why he reached the conclusion regarding Plaintiff's exertional limitations. (*Id*. at 2.)

The Federal Magistrates Act requires the district court to make a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Conversely, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are

addressed. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Plaintiff does not object to the Magistrate Judge's consideration of her contention with respect to the ALJ's credibility determination. Therefore, the Court adopts the Magistrate Judge's decision as stated in the PF&R. Consequently, the only issue before the Court is whether the ALJ's determination of the weight accorded to Drs. Cole and Reddy is supported by substantial evidence.

V.

The Commissioner has promulgated regulations providing guidance on how medical opinions are to be weighed in disability determinations. *See* 20 C.F.R. §§ 404.1527, 416.927. The Commissioner must evaluate every medical opinion received and consider it together with the rest of the relevant evidence in the record. 20 C.F.R. §§ 404.1527(b) and (d), 416.927(b) and (d). The weight given to each medical opinion is generally determined by the relationship between the physician and the claimant. "Generally, [the Commissioner] give[s] more weight to opinions from [the] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment[.]" 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, this "treating physician rule" is not without its limits. Under the "rule," a "treating source's opinion [on the issue(s) of the nature and severity of an impairment] is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence of record."

(*Id.*) Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citation omitted). When the treating source's opinion is not given controlling weight, the ALJ must consider the following factors (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization and (6) other factors brought to the ALJ's decision which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Likewise, the Commissioner considers all evidence from non-examining sources to be opinion evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f). The non-examining source opinions are generally made by state agency medical and psychological consultants that are "highly qualified physicians . . . who are also experts in Social Security evaluation." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). The findings and other opinions of these physicians are considered, except for the ultimate determination about whether a claimant is disabled. (*Id*).

Additionally, there are opinions provided by medical sources on issues which are reserved to the Commissioner "because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). On such issue as the claimant's residual functional capacity ("RFC"), the

Commissioner considers medical source opinions, but the final responsibility for deciding the issue is reserved to the Commissioner.[5] (*Id.*)

The Court finds that Plaintiff's challenge to the PF&R is merely a restatement of the argument set forth in her brief which was properly rejected by the Magistrate Judge. Her stated assertion that the PF&R "do[es] not shed further light on the ALJ's unsupported determination" is conclusory and wholly without merit given the Magistrate Judge's consideration of her medical record and the ALJ's decision. Notwithstanding Dr. Cole's role as Plaintiff's treating physician, this Court finds, as did the Magistrate Judge, that the ALJ's decision to give less weight to Dr. Cole's opinion regarding Plaintiff's limitations on work-related activities is supported by substantial evidence. The record reveals that on July 1, 2009, Dr. Cole completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" form which required his assessment of how Plaintiff's physical capabilities are affected by the impairment and identification of the medical findings supporting his assessment. On the form, Dr. Cole provided responses that resulted in the following conclusions:

- Plaintiff's ability to lift or carry was affected by her osteoporosis and degenerative joint disease/joint pain, to the extent that she could occasionally lift or carry a maximum of ten to fifteen pounds during an 8-hour period, with five pounds lifted or carried frequently.

- Plaintiff could stand or walk for two hours in an eight-hour workday and that she could do so fifteen minutes without interruption. His support for this assertion was denoted by the response of "Historical."

- With respect to postural activities, Plaintiff could never climb, crouch, kneel or crawl. However, she could occasionally perform a balance function and stoop. This assessment was based on osteoporosis and degenerative joint disease of knees.

---

[5] "RFC assesses the 'maximum degrees to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Mastro*, 270 F.3d at 179 (citing 20 C.F.R. 404, Subpart P, App.2 § 200.00(c)).

13

- Plaintiff's impairments did not cause environmental restrictions to noise or vibrations. However, her impairments caused such restrictions with respect to heights, temperature extremes, chemicals, dust, fumes and humidity. Dr. Cole listed that these restrictions were supported by "Historical sensitivities by patient."

- Plaintiff had occasionally fingering (fine manipulation) functions caused by her osteoporosis and degenerative joint disease to her left thumb joint.

- Plaintiff did not have any visual or communicative limitations caused by her impairments and her ability to sit was not affected by her conditions or illnesses.

(AR at 394-397.)

The ALJ considered that Dr. Cole was Plaintiff's only treating source and that Plaintiff previously complained of back and knee pain. However, in determining Plaintiff's RFC, the ALJ concluded that Dr. Cole's opinion that Plaintiff's limitations were due to osteoarthritis and degenerative joint disease was inconsistent with x-rays of Plaintiff's spine, knee and hip. The ALJ considered that support of Dr. Cole's opinion did not include any significant abnormal findings regarding Plaintiff's impairments or referrals to specialists or other physicians for further testing. The ALJ also observed that Dr. Cole's office failed to show that he ever made any specific diagnosis related to Plaintiff's back or knee pain, even though his records reflected regular office visits for more than five years. The ALJ found that the "conservative care" and "non-acute findings" failed to support the extreme limitations alleged by Plaintiff. The ALJ also considered that there was no indication in Plaintiff's records that she suffered any significant limitations arising from her obesity. As the Magistrate Judge noted, Dr. Cole did not list Plaintiff's obesity as a factor or consideration supporting his opinion of her limitations. Instead, his opinion was based, in part, on the history of her complaints. A review of the entirety of the ALJ's decision reveals that the decision to afford "little weight" to the opinion of Dr. Cole was adequately supported inasmuch as it lacked supportability and consistency with the objective medical evidence in the record. That evidence

14

includes Dr. Rahim's assessment that Plaintiff had full range of motion of her shoulders, elbows, wrists, knees, hips, ankles and lumber spine, as well as, equal motor function in all four extremities, normal symmetrical reflexes, intact sensation and normal unassisted gait. (AR at 270.) Dr. Rahim also reported that Plaintiff could walk on her heels and toes, squat without difficulty and exhibited negative straight leg raising both sitting and supine. (AR at 272.) Although, Dr. Rahim diagnosed Plaintiff with osteoarthritis (AR at 272), the ALJ found the foregoing evidence as "overwhelming benign clinical findings" that demonstrated Plaintiff was not as limited by back and knee pain as she alleged. As a result, this Court finds that the ALJ's decision to accord less weight to the treating physician's opinion was proper "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d 178.

Likewise, the Court finds Plaintiff's challenge to the ALJ's determination of the weight given to the two non-examining physicians is equally without merit. This Court has considered that both Dr. Withrow and Dr. Reddy provided opinions with respect to Plaintiff's RFC. As stated above, the ALJ ultimately determined Dr. Withrow's opinion to be more consistent with the evidence of record. A review of the record in this case reveals that on October 4, 2007, Dr. Reddy provided a RFC assessment that Plaintiff could do light work with some restrictions. Specifically, Dr. Reddy concluded, *inter alia*, that Plaintiff could (1) occasionally lift or carry twenty pounds in an eight-hour workday; (2) stand, sit or walk about six hours in an eight-hour workday; (3) never balance or climb a ladder, rope or scaffold, and (4) occasionally climb stairs, stoop, kneel, crouch and crawl. (AR at 217-224.) Dr. Reddy's RFC assessment was based upon a review of Plaintiff's Access Health treatment records from March 2002 through the date of the report, noting specifically treatment records of July 17, 2006, and August 22, 2007. (AR at 224.) Dr. Reddy indicated that complaints of knee pain were not found anywhere in her medical evidence record. (*Id*.)

Three months later, Dr. Withrow reviewed the same medical records. On January 11, 2008, Dr. Withrow determined, among other things, that Plaintiff could (1) occasionally lift or carry fifty pounds in an eight-hour workday; (2) stand, sit or walk about six hours in an eight-hour workday; (3) crawl or climb a ladder, rope or scaffold, and (4) occasionally climb stairs, balance, stoop, kneel, and crouch. (AR at 244-246.) Dr. Withrow determined that Plaintiff could do medium work. He noted that she alleged dizziness and fainting associated with headaches. (AR at 249.) However, although the allegations were supported in the medical evidence, he observed the lack of a specific diagnosis. (*Id*.) On February 12, 2008, Dr. Withrow reaffirmed his findings upon a review of "new medical evidence." He found that there was no basis to alter his early conclusion that Plaintiff could perform medium work with restrictions.

With respect to these doctors, Plaintiff has asserted that the two non-examining physicians reviewed the same evidence but came to different opinions. Plaintiff argues the ALJ chose the opinion of Dr. Withrow without explaining the discrepancy. Plaintiff's assertion is contradicted by the record evidence in this case which includes evidence that Dr. Withrow reviewed "new medical evidence," which was not available to Dr. Reddy four months earlier. Specifically, Dr. Reddy did not have the benefit of reviewing the February 2008 x-rays discussed above and Dr. Rahim's assessment of Plaintiff's functionality. The ALJ fully considered this evidence and the record as a whole to explain the weight determination as to the opinions of the two non-examining physicians. Plaintiff need only consider the ALJ's entire decision to find an explanation of the ALJ's weight determination of the RFC assessments. Ultimately, the ALJ was not persuaded that Plaintiff's impairments sufficiently limited her activities as she alleged due to the benign findings in the

16

medical evidence and a record that demonstrated conservative care treatment inconsistent with her allegations.

As a result, the Court finds that the ALJ's decision in this matter was supported by substantial evidence and his determinations were adequately explained as required by the applicable regulations. Therefore, the Court finds that Plaintiff's objection is overruled.

VI.

Accordingly, based on the foregoing, the Court **ORDERS** that the Magistrate Judge's Proposed Findings and Recommendation (Document 13) be **ADOPTED**, that Defendant's Brief in Support of Judgment on the Pleadings (Document 12) be **GRANTED**, that Plaintiff's Brief in Support of Judgment on the Pleadings (Document 11) be **DENIED**, that the final decision of the Commissioner be **AFFIRMED** and that this matter be **DISMISSED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 19, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA